IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW YOUNG, | : | Case No. 4:15-cv-01917 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| SUNBURY POLICE DEPARTMENT, GARY HECKMAN, and CHRISTOPHER BLAISE, | : : : : | |
| Defendants. | : | |

**MEMORANDUM**
February 3, 2016

Pending before this Court is a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Sunbury Police Department, Gary Heckman, and Christopher Blaise (hereinafter "Defendants") against Plaintiff Matthew Young (hereinafter "Mr. Young").[1] The motion seeks to dismiss Mr. Young's claims for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.*, (hereinafter "ADA") and the Rehabilitation Act, 29 U.S.C. § 794 (hereinafter "RA") and for violations of the Fourteenth and Eighth Amendments under 42 U.S.C. § 1983.[2] This matter has been fully briefed and is now ripe for disposition.

---

[1] ECF No. 18.
[2] ECF No. 1.

In accordance with the following reasoning, Defendants' motion to dismiss is denied.

## I. BACKGROUND

According to Mr. Young's complaint, he suffers from the following physical and mental disabilities: antrioventricular septal defect, mitral valve insufficiency, postural orthostatic tachycardia syndrome, seizures, neurocardiogenic syncope and palpitations, mild mental retardation, Asperger's syndrome, ADHD, developmental delay, speech delay, short stature disorder, growth hormone deficiency, facial dysmorphism, hearing loss, and failure to thrive.[3] Due to his many disabilities, Mr. Young, age eighteen, speaks, understands, performs math, and reads at a third grade level for which he receives private tutoring. This tutoring was to have occurred at the Degenstein Community Library, Sunbury, Pennsylvania. Prior to the onset of the tutoring, Mr. Young and his father met with the library staff. Mr. Young's father explained the nature of Mr. Young's disabilities and asked them to call him if they experienced any issues with Mr. Young.

With that background in mind, on October 30, 2014, Mr. Young, then age seventeen, experienced a "serious health emergency in the form of an episode of a neurocardiogenic syncope/tonic-clonic seizure" while he was at the Degenstein

---

[3] ECF No. 1 at ¶ 8.

Community Library waiting to begin a tutoring session.[4] During the seizure, Mr. Young fell to the floor and began moving in an unusual fashion, which included tugging at his loose-fitting clothing. A library staff member observed this behavior but reported to the library director that she had witnessed Mr. Young lying on the floor, exposing himself, and masturbating. The library director proceeded to call 911 and reported the staff member's observations.

Police officers from the Sunbury Police Department were dispatched and Officer Gary Heckman arrived on the scene, followed minutes later by Officer Christopher Blaise. The officers proceeded to arrest Mr. Young. As Mr. Young was escorted through the library parking lot, Officer Blaise, who knew Mr. Young and his father, shouted to Mr. Young's father, who was then returning to the library, that Mr. Young had been "masturbating" and that he was being taken to the police station.

At the police station, the police proceeded to interrogate Mr. Young, refusing to allow Mr. Young to see his father and denying his father's request to obtain medical care for his son. After Mr. Young's father spoke to Officer Heckman and informed him of Mr. Young's disability and need for medical care, Officer Heckman replied, "I don't buy it. He knows what he's doing."[5] Mr. Young was eventually released into his father's custody and transported to a hospital

---

[4] *Id.* at ¶ 12-14.
[5] *Id.* at ¶ 28-29.

where he was admitted for two days of treatment to stabilize him after the seizure. Mr. Young's arrest led to charges that were subsequently dismissed as baseless.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[6] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[7] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[8]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[9] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[10] More specifically, the Court in these

---

[6] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).
[7] *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).
[8] *Neitzke*, 490 U.S. at 327.
[9] Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).
[10] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.

two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[11]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[14] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[15]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[11] *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
[12] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).
[13] *Iqbal*, 556 U.S. at 678.
[14] *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).
[15] *Twombly*, 550 U.S. at 556.
[16] *Iqbal*, 556 U.S. at 679.

plausibility of entitlement to relief.'"[17]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[18] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[19] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[20] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[21]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[22]

---

[17] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).
[18] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).
[19] *Iqbal*, 556 U.S. at 678 (internal citations omitted).
[20] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).
[21] *Iqbal*, 556 U.S. at 678.
[22] *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

## III. DISCUSSION

Mr. Young's complaint consists of a claim against the Sunbury Police Department for violations of the ADA and RA (Count I) and a claim against Officers Gary Heckman and Christopher Blaise for violations of the Fourteenth and Eighth Amendments for a denial of medical care under 42 U.S.C. § 1983 (Count III).[23] In their motion to dismiss, Defendants seek to dismiss both counts of Mr. Young's complaint. The Court will address these issues in turn.

### A. **Count I**

Defendants request that the Court dismiss Count I of Mr. Young's complaint because Mr. Young failed to demonstrate a *prima facie* claim for a violation of the ADA and the RA. Specifically, Defendants' submit that the ADA and the RA are inapplicable to this case because the Third Circuit has never held that either the ADA or the RA apply to arrest cases. In the absence of Circuit precedent, they cite decisions from the United States Courts of Appeals for the Fifth and Eighth Circuits for the proposition that "this Court should not use the ADA or the RA to circumscribe an officer's ability to arrest Plaintiff because of an alleged mental disability."[24] Mr. Young, conversely, argues that he has adequately pled facts to demonstrate a prima facie claim under the ADA and RA and cites cases from both this Court and the United States District Court for the Eastern District of

---

[23] ECF No. 1. Count II, for violations of the ADA and RA asserted against the Degenstein Community Library, was voluntarily dismissed by Mr. Young. ECF No. 24.
[24] ECF No. 19 at 6.

Pennsylvania holding that the ADA and RA apply to arrest cases under the "wrongful arrest" and the "reasonable accommodations" theories.

Defendants also argue that Mr. Young has failed to satisfy the requirements of *Ashcroft v. Iqbal*[25] because he failed to plead any facts 1) which tend to demonstrate that he was discriminated against or arrested because of his disability, 2) establishing that the Sunbury Police Department had a record of, or that Officers Heckman and Blaise had prior knowledge of, Mr. Young's disabilities, or 3) which suggest that the Sunbury Police Department receives federal financial assistance.[26] Defendants also argue that Mr. Young's request for compensatory damages under the ADA and RA must be dismissed because compensatory damages are unavailable absent a showing of intentional discrimination and Mr. Young fails to plead any facts to support a finding of intentional discrimination.

In response, Mr. Young argues that he has pled sufficient facts to establish that the officers had knowledge of Mr. Young's disability and need for medical care and that he was discriminated against because of his disability. He further argues that the Third Circuit held, in *Ridgewood Board of Education v. N.E. for M.E.*,[27] that a plaintiff need not prove intentional discrimination to recover

---

[25] 556 U.S. at 678.
[26] This Court acknowledges that Mr. Young has failed to allege that the Sunbury Police Department receives federal financial assistance. Defendants, however, in bringing this argument, fail to contest the assumption that it does. Therefore, in light of the fact that this motion to dismiss is denied, this Court will assume that the Sunbury Police Department receives federal financial assistance.
[27] 172 F.3d 238, 253 (3d Cir. 1999).

8

compensatory damages under the ADA and RA, but that regardless of this holding, he adequately pled facts supporting intentional discrimination.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities by a public entity, or be subjected to discrimination by any such entity."[28]  Pursuant to Section § 504 of the RA, "[n]o otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ."[29]

For purposes of the ADA, the term "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities," which include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[30] Major life activities also include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel,

---

[28] 42 U.S.C. § 12132.
[29] 29 U.S.C. § 794.
[30] 42 U.S.C. § 12102(1).

bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."[31]

### 1. Police activity under the ADA and RA

Both Mr. Young and Defendants properly indicate that the Third Circuit has yet to address the issue of whether or not arrest cases fall under the ADA and RA. Defendants argue that this Court should apply the reasoning of the Fifth Circuit in *Hainze v. Richards*,[32] which held that:

> Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life. Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents. While the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public.

Several district courts within the Third Circuit, however, have declined to follow *Haize* unless clearly "exigent circumstances" were present at the time of the

---

[31] 42 U.S.C. § 12102(2).
[32] 207 F.3d 795 (5th Cir. 2000).

arrest.[33] Putting the rationale of *Haize* aside, there are two theories under which police actions have been found to fall under the ADA and RA: the "wrongful arrest" theory and the "reasonable accommodation" theory.[34] These theories are clearly explained by the United States Court of Appeals for the Tenth Circuit in *Gohier v. Enright*.[35]

The "wrongful arrest" theory is applicable when "police wrongly arrested someone with a disability because they misperceived the effects of that disability as criminal activity."[36] Alternatively, the "reasonable accommodations" theory applies when police investigate and arrest a person with a disability for a crime unrelated to that disability, but fail to "reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees."[37]

---

[33] *See Schorr v. Borough of Lemoyne*, 243 F. Supp. 2d 232, 237 (M.D. Pa. 2003) (Kane, J.) ("The *Hainze* rationale for disallowing ADA claims when the challenged conduct occurred during 'exigent circumstances' does not apply here, and this Court believes that the Third Circuit would agree."), *see also Mohney v. Pa.*, 809 F. Supp. 2d 384, 399 (W.D. Pa. 2011), *Broadwater v. Fow*, 945 F. Supp. 2d 574, 591, n. 15 (M.D. Pa. 2013) (Connor, J.) ("The [defendants] urge the court to adopt the Fifth Circuit's holding in [*Hainze*], which held that the ADA does not apply to police officers' actions during an arrest. The court's esteemed colleague, the Honorable Yvette Kane, Chief Judge, undertook a thorough refutation of the *Hainze* opinion in [*Schorr*], which the court adopts *in toto*."), *Hogan v. City of Easton*, 2004 WL 1836992, *7 (E.D. Pa. August 17, 2004) (court did not apply *Hainze* as "the situation was under control and no one was in danger.").

[34] *Schorr*, 243 F. Supp. 2d at 238-9 (*citing Gohier v. Enright,* 186 F.3d 1216, 1221 (10th Cir. 1999)).

[35] 186 F.3d 1216, 1221 (10th Cir. 1999).

[36] *Id.* at 1220-1 (internal citations omitted).

[37] *Id.*

## 2. *Prima Facie Case for Compensatory Damages under the ADA and RA*

The substantive standards for determining liability under the ADA and RA are the same.[38] Accordingly, to make a *prima facie* case under ADA or the RA, the plaintiff must establish that:

> (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.[39]

While Defendants properly note that the Third Circuit has not yet spoken on the issue of compensatory damages under Title II of the ADA, this Court has previously held that compensatory damages are available under the RA and the ADA.[40] As noted above, Mr. Young cites to *Ridgewood Bd. Of Educ. v. N.E. for M.E.*,[41] for the proposition that "a plaintiff need not prove that defendants' discrimination was intentional" to recover compensatory damages under the ADA and RA.

This Court, however, previously considered the *Ridgewood* holding in *Baker v. Southern York County School District*[42] and found, instead, that a plaintiff "must present sufficient evidence of intentional discrimination to survive summary

---

[38] *Defreitas v. Montgomery Cnty. Corr. Facility*, 525 Fed. Appx. 170, 178 n. 13 (3d Cir. 2013) (*citing McDonald v. Pa. Dep't of Pub. Welfare,* 62 F.3d 92, 94–95 (3d Cir. 1995).
[39] *Defreitas*, 525 Fed. Appx. at 178 (*citing Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 553 n. 32 (3d Cir. 2007)).
[40] *Baker v. Southern York Cnty. Sch. Dist.*, 2012 WL 6561434 (M.D. Pa. Dec. 17, 2012) (Connor, J.).
[41] 172 F.3d 238, 253(3d Cir. 1999).
[42] 2012 WL 6561434 (M.D. Pa. Dec. 17, 2012).

judgment on his compensatory damages claim."[43] Moreover, the Court, in *Baker*, further applied the deliberate indifference standard to determine intentional discrimination.[44] "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood."[45] The public entity is on notice that an accommodation is required when either the plaintiff has alerted the public entity to his need for accommodation or "where the need for accommodation is obvious."[46] A "failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness."[47]

In paragraphs eight through ten of Mr. Young's complaint, Mr. Young avers that he is a qualified individual with a disability and provides a comprehensive list of his physical and mental disabilities and indicates that he resides with his father, who provides his daily care. Consequently, this Court concludes that Mr. Young has pled sufficient facts to allege that he is a qualified, disabled individual under the ADA.

---

[43] *Baker*, 2012 WL 6561434 at *3 (citing *Kaitlin C. ex rel. Shannon M. v. Cheltenhap Tp. Sch. Dist.*, 2010 WL 786530 (E.D. Pa. March 5, 2010) ("We agree with our sister court's reasoning in *Kaitlin C.* that '[t]here is no indication that the court's statement in *Ridgewood* was intended to apply to § 504 claims seeking compensatory damages.' The *Kaitlin C.* court conducted an in-depth analysis of the Rehabilitation Act's remedies provision as well as Supreme Court precedent to support its conclusion that compensatory damages under § 504 require a showing of intentional discrimination.")
[44] *Baker*, 2012 WL 6561434 at *3 (citing *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) (citing *Bartlett v. N.Y. State Board of Law Exam'rs,* 156 F.3d 321, 331 (2d Cir. 1998) *rev'd on other grounds,* 527 U.S. 1031 (1999); *Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1153 (10th Cir. 1999); *Ferguson v. City of Phx.,* 157 F.3d 668, 674 (9th Cir. 1998) (which described both the current "intentional discrimination" standard and a "discriminatory animus" standard which was later rejected by *Duvall*.)).
[45] *Duvall*, 260 F.3d at 1139.
[46] *Id.*
[47] *Id.*

Mr. Young also pleads the he suffered a seizure which caused him to fall to the floor, move in an unusual fashion, and tug at his loose-fitting clothing.[48] He further alleges that he was arrested as a direct result of this seizure, after a library staff member called the police when she erroneously believed Mr. Young was exposing himself and masturbating.[49] Again, this Court concludes that Mr. Young has pled enough facts to establish that he was wrongfully arrested because of a misperception that the effect of the disability was, instead, criminal activity.

Finally, Mr. Young further pleads that, after his arrest, Mr. Young's father notified police that Mr. Young was in medical distress and needed medical care.[50] Mr. Young alleges that the police refused to permit Mr. Young's father to see him and refused to provide medical care for him, and instead proceeded to interrogate him, without his father being present.[51] Mr. Young pleads that because of police conduct, he experienced delay in treatment, pain and suffering, embarrassment, emotional trauma, fear of police, authority figures, and the general public, and humiliation.[52] As above, Mr. Young has pled sufficient facts to establish that Defendants failed to reasonably accommodate his disability in the course of his arrest, which caused him to suffer injury.

---

[48] ECF No. 1, ¶ 14.
[49] *Id.* at ¶ 15-16.
[50] *Id.* at ¶ 26.
[51] *Id.* at ¶¶ 26-28.
[52] *Id.* at ¶ 31.

14

That said, Mr. Young must plead enough facts to establish that Defendants acted with deliberate indifference; he must establish that Defendants were on notice that Mr. Young required an accommodation and that they failed to act. Here, Mr. Young pled that Officer Blaise knew Mr. Young and his father personally and knew of Mr. Young's disabilities.[53] Mr. Young also pled that Officer Heckman became aware of Mr. Young's abnormal behavior and that he concluded that he at least had a speech impediment and a learning disability.[54] Defendants were subsequently told by Mr. Young's father that he suffered from disabilities and that he required immediate medical attention.[55] Officer Heckman replied that he did not "buy it" and that Mr. Young knew what he was doing.[56]

This Court concludes that Mr. Young has pled sufficient facts to make an argument that Mr. Young's need for an accommodation was at least obvious, that the Defendants failed to act, and that their failure to act was more than negligent because they were told by Mr. Young's father of his need for medical attention and nevertheless refused to provide it.

At this early stage in the litigation, Mr. Young has pled sufficient facts to establish a prima facie claim for compensatory damages under the ADA and RA. These claims survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.

---

[53] *Id.* at ¶¶ 17, 25.
[54] *Id.* at ¶ 20.
[55] *Id.* at ¶ 26.
[56] *Id.* at ¶ 29.

## B. Count III

Defendants also seek dismissal of the Section 1983 claims against Officers Heckman and Blaise on the theory that the officers are entitled to qualified immunity because their conduct was not clearly unlawful. Defendants also claim that Mr. Young has failed to assert a claim under the Eighth and/or Fourteenth Amendments for a denial of medical care because he failed to allege any facts that would demonstrate that the officers were deliberately indifferent to Mr. Young's medical condition or that they sought to punish him by denying him medical care. Defendants argue that the claims against the officers, like the claims against the Sunbury Police Department, are simply conclusory statements that fail to satisfy the pleading standard enunciated in *Iqbal* and *Twombly*. Lastly, Defendants seek to dismiss Mr. Young's request for punitive damages against the officers because he fails to plead any allegations of egregious or wanton conduct.

The law recognizes that police officers are generally protected by qualified immunity but can nevertheless be liable under Section 1983 if they are found to have violated an individual's constitutional rights. In *Saucier v. Katz*,[57] the Supreme Court of the United States articulated a two-pronged test for courts to administer to determine whether or not a police officer is entitled to qualified immunity.

---

[57] 533 U.S. 194, 202 (2001).

Under the *Saucier* test, a court must first decide if, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right.[58] If a violation of a constitutional right could be found, the court must also determine "whether the right was clearly established."[59] A right is clearly established if "a reasonable official would understand that what he is doing violates that right."[60] "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."[61] *Saucier* and its progeny allow officers the flexibility to make reasonable but mistaken judgments and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"[62]

The two-pronged *Saucier* test was reexamined by the Supreme Court in *Pearson v. Callahan*.[63] The *Pearson* Court diluted *Saucier*, holding that while the sequence of the two-pronged test may be appropriate in some circumstances, it is no longer mandatory. The decision as to which of the two prongs should be examined first is left to the sound discretion of the district court and in light of the circumstances of the particular case at hand.[64]

---

[58] *Id.*
[59] *Id.*
[60] *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (*citing Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).
[61] *Carroll*, 135 S. Ct. at 350 (*citing Ashcroft v. al-Kidd*, 563 U.S. 731 at ——, 131 S. Ct. 2074 at 2083 (2011)).
[62] *Carroll*, 135 S. Ct. at 350 (*citing al-Kidd*, 563 U.S. at ——, 131 S. Ct. at 2085 (internal citations omitted)).
[63] 555 U.S. 223 (2009)
[64] *Id.* at 236.

The Supreme Court of the United States held in *Estelle v. Gamble*,[65] that "deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment.[66] Not all "inadvertent failure[s] to provide adequate medical care" to prisoners, however, become cognizable claims under the Eighth Amendment.[67] "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[68]

While Mr. Young was not a convicted prisoner at the time of the alleged violation, the Supreme Court has held that the "Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"[69] The Third Circuit has further applied the deliberate indifference standard to arrestees.[70]

To find that a defendant acted with deliberate indifference to an arrestee's medical needs, the arrestee must show that he had a serious medical need and that acts or omissions by the defendant indicated deliberate indifference to that need.[71] Therefore, Mr. Young must plead sufficient facts to establish that Officers Heckman and Blaise knew of the risk to Mr. Young and nevertheless disregarded

---

[65] 429 U.S. 97 (1976).
[66] *Id.* at 104 (*citing Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).
[67] *Estelle*, 429 U.S. at 105.
[68] *Id.* at 106.
[69] *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003)(*citing City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).
[70] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636–37 (3d Cir. 1995).
[71] *See Gunter v. Township of Lumberton*, 535 Fed. Appx. 144, 149 (3d Cir. 2013) (*citing Natale*, 318 F.3d at 582).

it.[72] To that end, Mr. Young alleged that Officer Blaise knew Mr. Young and his father personally and knew of Mr. Young's disabilities.[73] Mr. Young further pled that, while at the library and prior to arresting Mr. Young, Officer Heckman "immediately perceived that Plaintiff was behaving abnormally and concluded that he at least had a speech impediment and a learning disability" based upon interaction with Mr. Young.[74]

After arresting Mr. Young and transporting him to the police station, Defendants were told by Mr. Young's father that he suffered from disabilities and that he required immediate medical attention.[75] As has been previously noted, Officer Heckman replied that he did not "buy it" and that Mr. Young knew what he was doing.[76] Mr. Young pled that he was "eventually" released to the custody of his father, who transported him to the hospital, where he was admitted for two days in order to stabilize him after the neurocardiogenic syncope/tonic-clonic seizure.[77]

Viewing the complaint in the light most favorable to Mr. Young, as the Court is obliged to do, and mindful of existing precedent as delineated above, the Court believes that Mr. Young has sufficiently pled that Defendants violated a

---

[72] *Id.*
[73] ECF No.1 at ¶¶ 17, 25.
[74] *Id.* at ¶ 20.
[75] *Id.* at ¶ 26.
[76] *Id.* at ¶ 29.
[77] *Id.* at ¶ 30.

constitutional right to receive medical care and that Officers Heckman and Blaise knew of the risk to Mr. Young and nevertheless disregarded it.

## IV. CONCLUSION

In accordance with the foregoing analysis, Defendants' motion to dismiss Counts I and III pursuant to Federal Rule of Civil Procedure 12(b)(6)[78] is denied.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[78] ECF No. 18.